**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| RODRIGO LIZAMA GUTIERREZ, | ) |
| | ) |
| *Petitioner-Plaintiff* | ) |
| | ) |
| v. | ) |
| | ) |
| RUSSELL HOTT, *in his official capacity* | ) |
| *as the Washington Field Office Director of* | ) |
| *Immigration and Customs Enforcement; and* | ) |
| | ) |
| JEFFREY CRAWFORD, *in his official capacity* | ) |
| *as Director of the ICA-Farmville Detention Center* | ) |
| | ) |
| CHAD F. WOLF, *in his official* | ) |
| *capacity Acting Secretary of Homeland* | ) |
| *Security;* | ) |
| | ) |
| MATTHEW T. ALBENCE, *in his official* | ) |
| *capacity as Acting Director of Immigration* | ) |
| *and Customs Enforcement* | ) |
| | ) |
| U.S. IMMIGRATION AND CUSTOMS | ) |
| ENFORCEMENT | ) |
| | ) |
| WILLIAM P. BARR, *in his official capacity* | ) |
| *as Attorney General of the United States* | ) |
| | ) |
| JAMES MCHENRY, *in his official capacity* | ) |
| *as Director of the Executive Office for* | ) |
| *Immigration Review* | ) |
| | ) |
| DAVID H. WETMORE, *in his official capacity* | ) |
| *as Chairman of the Board of Immigration Appeals* | ) |
| | ) |
| BOARD OF IMMIGRATION APPEALS | ) |
| | ) |
| *Respondents-Defendants.* | ) |
| | ) |

**PETITION FOR WRIT OF**
**HABEAS CORPUS AND**
**MANDAMUS AND COMPLAINT**
**FOR INJUNCTIVE AND**
**DECLARATORY RELIEF**

Civ. No.: _____

## INTRODUCTION

1.        Petitioner-Plaintiff Rodrigo Lizama Gutierrez ("Petitioner" or "Mr. Lizama Gutierrez")  respectfully petitions this Honorable Court for a writ of habeas corpus to remedy his unlawful prolonged detention by Respondents-Defendants ("Respondents") for 22 months and counting, and for a writ of mandamus to compel the Board of Immigration Appeals ("BIA") to undertake unlawfully withheld and unreasonably delayed action regarding his Motion to Reconsider which has been pending for nearly 11 months.

2.        Petitioner Rodrigo Lizama Gutierrez is currently detained in the custody of Respondents at Farmville Detention Center pending his removal proceedings. The government has detained Mr. Lizama Gutierrez since on or around August 7, 2018. Respondents' prolonged detention of Mr. Lizama Gutierrez violates the Due Process Clause of the Fifth Amendment. Mr. Lizama Gutierrez' claims are substantially similar to that of the claims put forward by the petitioner in *Portillo v. Hott*, 322 F. Supp. 3d 698 (E.D. Va. 2018), where the court found petitioner's prolonged detention in Immigrations and Customs Enforcement ("ICE") custody in excess of 14 months in violation of the Constitution and ordered an individualized immigration court bond hearing.

3.        Additionally, Respondents have been detaining Mr. Lizama Gutierrez without a bond hearing, despite the fact that the BIA is judicially reviewing his motion to reconsider and has granted him a stay of removal. As this Court has found, the detention of an individual with a stay of removal pending appeal falls under 8 U.S.C. § 1226, not 8 U.S.C. § 1231. *Bah v. Barr*, 409 F. Supp. 3d 464, 470 (E.D. Va. 2019).

4.        Mr. Lizama Gutierrez respectfully requests that this Court grant his writ of habeas corpus, ordering Respondents to immediately release him from custody or, in the alternative, to

grant him an individualized hearing, at which the government must bear the burden and establish by clear and convincing evidence that Mr. Lizama Gutierrez presents a risk of flight or danger, even after consideration of alternatives to detention that could mitigate any risk that his release would present, and if the government cannot meet its burden, to release Mr. Lizama Gutierrez immediately on appropriate conditions of supervision, taking into account his financial ability to pay bond.

5.      Mr. Lizama also respectfully requests judicial review of certain actions undertaken by the BIA. On July 26, 2019, the BIA erroneously dismissed Mr. Lizama Gutierrez's Notice of Appeal as untimely based on the agency's clerical mistake regarding the date of the mailing of Petitioner's notice of appeal of the immigration judge's order of removal. On August 7, 2019, Mr. Lizama Gutierrez's immigration appellate counsel timely filed a Motion to Reconsider ("MTR"). Since that time, Mr. Lizama Gutierrez through immigration counsel has made several inquiries and filed a Motion to Expedite adjudication of the Motion to Reconsider with the Board but the BIA has taken no action for 11 out of the 22 months he has been in detention. The BIA's continuing and unjustified delay of action is an unlawful withholding and an unreasonable delay. This violates the Administrative Procedures Act.

6.      Mr. Lizama Gutierrez respectfully requests that this Court issue a writ of mandamus compelling the BIA to act on the MTR.

7.      Mr. Lizama Gutierrez, who suffers from frequent and recurring chronic respiratory infections, remains languishing in detention during a global pandemic. He is highly vulnerable to serious injury and death if he contracts COVID-19, for which there is no known vaccine, treatment, or cure. The risk to his person cannot be denied as there is an active outbreak of the virus at Farmville Detention Center, including now 48 confirmed positive COVID-19

cases, with 47 of those confirmed case currently under monitoring.[1] As set forth below, the danger posed by Petitioner's detention during the COVID-19 pandemic is "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk" and violates his constitutional right to safety in government custody. *Helling v. McKinney,* 509 U.S. 25, 36 (1993). Petitioner's continued detention therefore also violates Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, because Respondents are failing to provide appropriate accommodations for Petitioner's disabilities.

## JURISDICTION & VENUE

8.     This action arises under the Due Process Clauses of the Fifth Amendment to the United States Constitution, the Administrative Procedures Act, , 5 U.S.C. § 702, and the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*

9.     This Court has subject-matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1361 (mandamus), 28 U.S.C. § 1331 (federal question), 5 U.S.C. § 702 (waiver of sovereign immunity and review of agency action), 28 U.S.C. § 1346 (original jurisdiction), 28 U.S.C. § 1651 (All Writs Act), 28 U.S.C. §§ 2201-02 (declaratory relief), U.S. CONST. art. 1, § 9, cl. 2 (Suspension Clause), as Mr. Lizama Gutierrez is presently in custody under or by color of the authority of the United States, and Mr. Lizama Gutierrez challenges his custody as a violation of the Constitution, laws, and/or treaties of the United States.

10.     The federal district courts have subject matter jurisdiction under both 28 U.S.C. § 1331 and 28 U.S.C. § 1361 to hear mandamus claims by individuals challenging the lawfulness

---

[1] U.S. Immigration and Customs Enforcement, ICE Guidance on COVID-19 (accessed Jun. 24, 2020), https://www.ice.gov/coronavirus.

of agency inaction by the Board of Appeals. Additionally, the Administrative Procedures Act, 5

U.S.C. § 702, waives sovereign immunity in suits against the government for injunctive relief.

11.     Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. § 2241(d)

and pursuant to 28 U.S.C. § 1391(b) and (e).

## THE PARTIES

12.     Petitioner Rodrigo Lizama Gutierrez is a noncitizen who is currently detained by

ICE at Farmville Detention Center, controlled and operated by the company Immigration Centers

of America ("ICA-Farmville" or "Farmville Detention Center") in Farmville, Virginia, pending

the outcome of his appeal to the BIA challenging his removal order, which the Board stayed on

May 7, 2019. In addition to having been deemed incompetent by an Immigration Judge during

his removal proceedings based on his mental health status and disabilities, Mr. Lizama Gutierrez

suffers from frequent and recurring chronic respiratory infections. He is therefore at high risk of

severe illness or death if he contracts COVID-19. If released, he will reside at 2823 South Glebe

Road, Arlington, VA 22206, where he can quarantine and social isolate with his mother, Mirna

Gutierrez. His family friend, Edmund Baker will pick him up and drive him to his mother's

house and assist with any medical appointments should they be needed to avoid public

transportation.

13.     Respondent Russell Hott is the Field Office Director of the Washington Field

Office of ICE, and as such is the federal agent charged with overseeing all ICE detention centers

in Virginia including Farmville Detention Center. Respondent Hott is a legal custodian of

Petitioner. Mr. Hott is sued in his official capacity.

14.     Respondent Jeffery Crawford is the Director of the Farmville Detention Center,

which is owned and operated by ICA-Farmville, and is the facility at which Respondents have

detained Petitioner. Respondent Crawford is responsible for overseeing the administration and management of the Farmville Detention Center. Accordingly, Respondent Crawford is the immediate custodian of the Petitioner. He is sued in his official capacity.

15.     Respondent Chad F. Wolf is the Acting Secretary of Department of Homeland Security, the arm of the U.S. government responsible for administration and enforcement of immigration laws. He has supervisory responsibility for and authority over the detention and removal of noncitizens throughout the United States. ICE is a subdivision of the Department of Homeland Security ("DHS"). Mr. Wolf is the ultimate legal custodian of the Petitioner. Mr. Wolf is sued in his official capacity.

16.     Respondent Matthew T. Albence is the Deputy Director and Senior Official Performing the Duties of the Director of ICE. In this capacity, he is responsible for the enforcement of immigration laws and for ICE's policies, practices, and procedures. He has authority over the detention and removal of noncitizens throughout the United States. As such, he is a legal custodian of the Petitioner. Mr. Albence is sued in his official capacity.

17.     Respondent ICE is a federal law enforcement agency within DHS. ICE is responsible for the criminal and civil enforcement of immigration laws, including the detention and removal of immigrants. The Enforcement and Removal Operations ("ERO") is a division of ICE, which manages and oversees the immigration detention system. Defendant ICE is a legal custodian of Petitioner.

18.     Respondent William P. Barr is the Attorney General of the United States. As Attorney General, Mr. Barr oversees the immigration court system, including the BIA and its board members, which review appeals from immigration courts as his designee, and the

immigration judges who conduct bond hearings as his designees. He is sued in his official capacity.

19.     Respondent James McHenry is the Director of the Executive Office for Immigration Review ("EOIR"). As Director, Mr. McHenry directly oversees the immigration court system and its immigration judges, including the Board of Immigration Appeals and its board members. He is sued in his official capacity.

20.     Respondent David H. Wetmore is the Chairman of the Board of Immigration Appeals. As Chairman, he oversees the BIA, which is directly responsible for adjudicating appeals, including reviewing and adjudicating appeals and motions to reconsider filed with the Board. He is sued in his official capacity.

21.     Respondent, the BIA is an agency within the Executive Office for Immigration Review that is responsible for reviewing decisions of the Immigration Courts, and as such is responsible for reviewing Petitioner's appeal and subsequent Motion to Reconsider. Respondent BIA is sued in its official capacity.

## STATEMENT OF FACTS

### A.  Immigration and Procedural History

22.     Mr. Lizama Gutierrez is a native and citizen of El Salvador. He first entered the United States as an unaccompanied minor, without inspection on or around August 21, 2014. He fled El Salvador after the MS-13 gang tried to recruit him multiple times and, when he refused each time, attacked him and threatened to kill him and his family.

23.     The first time he was attacked, four members of MS-13 approached Mr. Lizama Gutierrez as he was on his way to school. The gang members attempted to recruit Mr. Lizama Gutierrez but he refused to join, and in response the gang called him homophobic slurs and

began to beat him, punching and kicking him and hitting him with a baseball bat in the stomach, back, and head. The gang then threatened to kill him and his family the next time they saw him, and told him that he would be killed if he went to the police. For that reason, he did not report the incident to officials. A few months later, MS-13 again tried to recruit Mr. Lizama Gutierrez and again he refused and was beaten. He fled El Salvador approximately a month later, arriving to the United States as an unaccompanied minor at the age of 15.

24.     Following his entry to the United States in 2014, Mr. Lizama Gutierrez was served with a Notice to Appear for Removal Proceedings ("NTA") and released.

25.     Shortly after his arrival, Mr. Lizama Gutierrez's mother and brother also migrated to the United States, and the three have lived as a family unit in Alexandria, Virginia up until Mr. Lizama Gutierrez's detention by ICE. Prior to his detention, his family relied on him for financial support, and as the eldest brother in a single-parent home, he was an important figure for the family. Mr. Lizama Gutierrez was a role model for his younger brother, and would often babysit his young niece, who lived about five minutes away. Since Mr. Lizama's detention and the loss of his financial support, his family has lost their home.

26.     As part of his initial immigration case in 2014, Mr. Lizama Gutierrez, then an unaccompanied minor, sought relief by applying for Special Immigrant Juvenile Visa (SIJS). Accordingly, on March 26, 2018, the Immigration Court granted Mr. Lizama Gutierrez's unopposed motion to terminate proceedings so that he could apply for Adjustment of Status with USCIS.

27.     On or around August 7, 2018, ICE took Mr. Lizama Gutierrez into custody at the Farmville Detention Center. ICE thereafter sought to reopen and move forward with Mr.

Lizama's initial removal proceedings before the Arlington Immigration Court as a result of his detention.

28.      Mr. Lizama's detention and removal proceedings initiated by ICE in 2018 stem from a single conviction for possession of marijuana (VA. Code § 18.2-250.1), for which he possessed a single marijuana cigarette under less than 30 grams, was sentenced to pay a $100 fine, and received suspension of his driver's license for six months. This conviction not only subjected him to mandatory (no-bond) immigration detention,[2] but also made him ineligible to adjust his status as a special immigrant juvenile minor because he did not qualify for a waiver of this minor offense under the immigration statute as he does not have any qualifying members who are U.S. citizens or lawful permanent residents.[3]

29.      Mr. Lizama has two other convictions: a conviction for destruction of property (VA. CODE § 18.2-137), stemming from an incident in 2017 where he accidentally broke a door for which he received no jail time and was sentenced to pay a $100 fine; and a conviction for trespassing (VA. CODE § 13.1-33), when he was cited for trespassing at an apartment complex where he was visiting a friend and for which he was sentenced to pay a $100 fine and six months' probation. For none of his three convictions was Mr. Lizama sentenced to any jail time.

30.      During his removal proceedings in 2018, Mr. Lizama appeared *pro se* at two preliminary hearings, one on September 20, 2018, and another held on November 1, 2018. At this second hearing, the Immigration Judge noted on the record that she was concerned that Mr.

---

[2] An offense such as this makes an immigrant inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(II), and unlike the deportability removability ground under 8 U.S.C. § 1227(a)(2)(B)(i) it does not provide for an exception to removability if the offense involves less than 30 grams of marijuana.
[3] The statute provides for a waiver of inadmissibility for offenses described in 8 U.S.C. § 1182(a)(2) under 8 U.S.C. § 1182(h), but this waiver is conditional upon demonstrating extreme hardship to a spouse, parent, son, or daughter who is a U.S. citizen or who has been lawfully admitted for permanent residence.  8 U.S.C. § 1182(h)(1)(B)

Lizama Gutierrez appeared to have mental health issues and so scheduled him for a competency hearing. On January 17, 2019, the Immigration Judge conducted a competency hearing and found Mr. Lizama Gutierrez to be mentally incompetent ordering he be appointed legal counsel for his removal proceedings through the EOIR's National Qualified Representative Program.

31.      On or around February 13, 2019, Ms. Eileen Blessinger entered her appearance in the Arlington Immigration Court as Mr. Lizama Gutierrez's immigration attorney and Qualified Representative. She represented him at a subsequent Master Hearing on March 7, 2019 and an Individual Hearing on the merits on April 1, 2019, in which he applied for asylum, withholding of removal, and protection under the Convention Against Torture. Following his merits hearing, Immigration Judge ("IJ") Farrar-Crocket issued a written decision denying his applications for relief despite finding Mr. Lizama Gutierrez had testified credibly, had a subjective fear of returning to his country, and in fact had experienced past harm at the hands of the MS-13 gang. Ex. A. The IJ's decision was mailed to the parties on May 8, 2019, and indicated that "any Notice of Appeal should be served on the Board of Immigration Appeals (hereinafter "BIA") within 30 calendar days after the date of mailing." *Id.* at 14.

32.      On June 7, 2019, Mr. Lizama Gutierrez, through appellate counsel Mr. Ben Winograd, timely filed a Form EOIR-26 Notice of Appeal with the BIA. The BIA acknowledged its receipt of the Notice on June 7. Ex. B. On July 26, 2019, nevertheless, the BIA dismissed Mr. Lizama Gutierrez's appeal as untimely based upon a mistaken belief that the decision had been mailed on May 7, which was the date when the decision was *issued*, rather than May 8, when the decision was actually *mailed*. On August 7, 2019, appellate counsel timely filed a Motion to Reconsider (hereinafter "MTR") with a copy of the BIA's opinion dismissing the matter, and the postmarked envelope from the Immigration Court showing the Immigration Judge's decision had

been mailed on May 8, 2020. Ex. C. On August 23, 2020, appellate counsel filed a Stay of

Removal with the Board, which was granted on August 26, 2020. Ex.  D. From August 2019 to

the present, Mr. Lizama Gutierrez has remained detained while his MTR with the BIA is

pending. The BIA has taken no action on this motion.

33.    On January 16, 2020, DHS joined Mr. Lizama Gutierrez in filing a Motion to Expedite the

Ruling on his MTR. On February 12, 2020, appellate counsel Mr. Winograd was replaced by

present appellate counsel, CAIR Coalition Senior Attorney and Qualified Representative, Mr.

Mark Feldman. Since February of 2020, Mr. Feldman has regularly followed up with the BIA

requesting a decision on the MTR, but has been informed that there are no statutory deadlines

that compel the agency to decide the motion. Ex. H, Declaration of Mark Feldman.

34.     As of the undersigned date, Mr. Lizama Gutierrez's MTR on his dismissed appeal

has been pending with the BIA for nearly 11 months, with no action taken. He remains detained

at government expense and without an independent hearing to determine the necessity or legality

of his prolonged detention. Mr. Lizama Gutierrez has deep remorse for his criminal actions. Mr.

Lizama Gutierrez, having now spent over 10 percent of his life and formative years in ICE

custody for a criminal offense where he received no jail time, prays for relief from indefinite

detention. He is fully aware of the error of his ways and has unequivocally stated his intention to

never smoke marijuana or disrespect another law again.


**B. COVID-19 Poses Grave Risk of Harm, Including Serious Illness or Death, to Individuals with Certain Underlying Medical Conditions**

35.     COVID-19 is a highly contagious disease that is easily transmitted through respiratory droplets, especially when one is within six feet of an infected individual, and in some cases when one is within 27 feet.[4] Its symptoms include fever, cough, and shortness of breath.[5]

36.     People can also spread COVID-19 but be asymptomatic,[6] making testing or seclusion of only those who are exhibiting symptoms an ineffective solution.

37.     COVID-19 can result in respiratory failure, kidney failure, and death. Infected individuals who do not die from the disease can face serious damage to the lungs, heart, liver, or other organs, resulting in prolonged recovery periods, including extensive rehabilitation from neurological damage and loss of respiratory capacity.

38.     COVID-19 can also severely damage lung tissue, affect cardiac functions, and cause widespread damage to other organs. These complications can manifest at an alarming pace. Patients can show the first symptoms of infection in as little as two days after exposure, and their condition can seriously deteriorate in as little as five days or sooner.

39.     Older individuals and those with certain medical conditions face greater chances of serious illness or death from COVID-19. Certain underlying medical conditions increase the risk of serious COVID-19 disease for individuals of any age, including lung disease, chronic liver or

---

[4] Bourouiba, Lydia, Journal of the American Medical Association, *Turbulent Gas Clouds and Respiratory Pathogen Emissions: Potential Implications for Reducing Transmission of COVID-19* (Mar. 26, 2020), *availalble at* https://jamanetwork.com/journals/jama/fullarticle/2763852?appId=scweb

[5] Centers for Disease Control & Prevention, *Coronavirus Disease 2019 (COVID-19)*, *available at* https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html.

[6] A study in Iceland, where COVID-19 testing is widespread, found that about half those who tested positive have no symptoms. Jason Gale, *Coronavirus Cases Without Symptoms Spur Call for Wider Tests*, Bloomberg (Mar. 22, 2020), *available at* https://www.bloomberg.com/news/articles/2020-03-22/one-third-of-coronavirus-cases-mayshow-no-symptom-scmp-reports.

kidney disease, diabetes, epilepsy, hypertension, compromised immune systems, blood disorders, inherited metabolic disorders, stroke, and pregnancy.

40.     Even younger and healthier individuals who contract COVID-19 may require supportive care. And those who develop serious complications will need advanced support, including highly specialized equipment that is in limited supply and an entire team of care providers, including 1:1 or 1:2 nurse to patient ratios, respiratory therapists, and intensive care physicians. This level of support is especially difficult to provide to detained individuals.

41.     The need for care, including intensive care, and the likelihood of death, is much higher from COVID-19 infection than from influenza. According to recent estimates, the fatality of people infected with the coronavirus is about ten times higher than a severe seasonal influenza, even in advanced countries with highly effective health care systems.

42.     Patients in high-risk categories who do not die from COVID-19 should expect a prolonged recovery, including the need for extensive rehabilitation.

43.     There is no vaccine against COVID-19, nor is there any known medication to prevent or cure infection from the virus.

44.     The only known effective measure to reduce the risk of severe illness or death to vulnerable individuals is to prevent them from being infected with the coronavirus. Social distancing, or remaining physically separated from known or potentially infected individuals, and vigilant hygiene, including washing hands with soap and water, are the only known effective measures to prevent infection.

45.     These practices are not possible in Farmville Detention Center, where large numbers of people are housed in close quarters in congregate settings, with minimal access to sinks, showers, toilets, water, personal hygiene and facility cleaning supplies.

**C. Mr. Lizama Gutierrez is Particularly Vulnerable to Serious Illness or Death If Infected by COVID-19 Due to His Underlying Health Conditions and Deteriorating Mental Health**

46.     Individuals with certain medical conditions face dramatically higher chances of serious illness or death from COVID-19. Individuals detained in immigration detention centers, like Petitioner, are also more susceptible to experiencing complications from infectious diseases than the population at large. This is especially true for individuals with underlying conditions. Infectious disease outbreaks such as COVID-19 can also exacerbate existing mental health conditions and can contribute to the development of new mental health conditions.

47.     Mr. Lizama Gutierrez is particularly vulnerable to serious illness or death if infected by COVID-19 while detained at Farmville Detention Center as he awaits adjudication of his immigration case. Mr. Lizama Gutierrez has a history of chronic, frequent and recurring respiratory infections, as well as a likely compromised immune system due to his inability to sleep more than two to three hours per night as a result of his debilitating anxiety and depression. Ex. E, Report of Kate Sugarman, MD, at 3. Additionally, he has been diagnosed with Post-Traumatic Stress Disorder ("PTSD") (ICD-10 Code F43.12), Major Depressive Disorder ("MDD") (ICD-10 Code F32.0), and medically severe Generalized Anxiety Disorder ("GAD") (ICD-10 Code F41.1). Ex. F, Report of Susan Osofsky, MSW, LCSW at 4. Despite the psychiatric care and medication he has received since October 2018, he has attempted suicide three times in ICE detention.

48.     Mr. Lizama Gutierrez's health conditions qualify as a disability under the Rehabilitation Act.

49.     As stated in a psychological evaluation conducted of Mr. Lizama Gutierrez, although he "has been receiving psychiatric care, it does not appear to be helping him as he has decompensated while in detention and continues to do so." Ex. G, Report Rahul P. Vasireddy,

14

MD, and Shawn S. Sidhu, M.D., FAPA, DFAACAP at 7. He continues to self-harm and experience suicidal ideation, cutting his legs with a razor in the shower and expressing to an officer on at least one occasion that he wishes to die. "If he were to remain in detention," the report notes, "his mental health would likely continue to deteriorate." *Id.* at 6.

50.     Mr. Lizama Guiterrez's pre-existing struggles with mental health and his continued detention are mutually reinforcing, and, as the Psychological Evaluation states, "he is in urgent need of a non-custodial environment and expert mental health care and medication." *Id.* If released, on the other hand, and placed in a safe environment with family members, "his condition is highly likely to stabilize, significantly reducing the risk of suicide." *Id.* at 7.

51.     As of June 10, 2020, Farmville Detention Center had only reported three positive cases of COVID-19, despite Governor Northam's formal letter issued nearly a month prior, urging the government to increase screening and testing for COVID-19 in Farmville Detention Center. As of June 18, 2020, the facility had reported 24 cases. In an email dated June 16, 2020 Respondent Crawford confirmed a total of 34 active cases, claiming that those cases were limited to detainees who had transferred into the facility and were being isolated. ICE's website now states there are 48 confirmed positive COVID-19 cases at Farmville Detention Center, with 47 positive cases being monitored.[7] Upon information and belief, there is currently an active outbreak at Farmville Detention Center and approximately over 70 individuals are reporting symptoms.

52.     The only known effective measures to reduce the risk of infection are social distancing, or remaining physically separated from known or potentially infected individuals,

---

[7] U.S. Immigration and Customs Enforcement, ICE Guidance on COVID-19 (accessed Jun. 24, 2020), https://www.ice.gov/coronavirus.

and vigilant hygiene, including washing hands with soap and water and/or other types of

disinfectants – practices which are impossible to regularly maintain in Farmville Detention

Center, where large numbers of people are housed in close quarters in congregate settings, with

minimal access to showers, toilets, water, personal hygiene and facility cleaning supplies.

53.     This is the hazardous environment in which the Respondents are detaining Mr.

Lizama Gutierrez who has a pre-existing history of chronic, frequent and recurring respiratory

infections that make him particularly vulnerable to the disease. Ex. E at 3.

54.     As an individual most vulnerable to COVID-19, Mr. Lizman Gutierrez should be

immediately released. ICE has the authority to release individuals from custody on medical

grounds and has routinely exercised its authority to release particularly vulnerable detainees like

Petitioner. Yet, ICE refuses to do so, putting his life at risk.

## LEGAL FRAMEWORK

## I.     Mr. Lizama Gutierrez is Entitled to Immediate Release or an Immediate Bond Hearing Under 8 U.S.C. § 1226(a) Pursuant to Statute and/or the Due Process Clause of the Fifth Amendment

### A.  The Relevant Detention Statute at Issue

55.     The BIA issued an order staying Mr. Lizama Gutierrez's removal pending its

review of his MTR, and he is therefore detained pursuant to 8 U.S.C. § 1226 rather than 8 U.S.C.

§ 1231.[8] *Bah v. Barr,* 409 F. Supp. 3d 464, 470 (E.D. Va. 2019).

56.     Two provisions of the INA govern the detention of non-citizens pending removal:

8 U.S.C. §§ 1226 and 1231. 8 U.S.C. § 1226 governs detention of individuals "pending a

---

[8] 8 U.S.C. § 1231's detention provisions are not triggered until the removal period begins, which it will not until, *inter alia,* "any court-issued stay of removal has been lifted." *Guzman Chavez v. Hott,* 940 F.3d 867, 876 (4th Cir. 2019), *cert. granted sub nom. Albence v. Chavez,* 2020 WL 3146678 (2020) (No. 19-897); 8 U.S.C. § 1231(a)(1)(B).

decision on whether [they are] to be removed from the United States," 8 U.S.C. § 1226(a), while 8 U.S.C. § 1231 governs detention of individuals during and, in some cases, after the "removal period," *id.* § 1231(a)(1)(A), while they are awaiting removal after exhausting the available legal avenues to challenge a final removal order.

57.    Detention under 8 U.S.C. § 1226 is generally discretionary. *Jennings,* 138 S. Ct. at 846. An individual detained under subsection (a) of that statute is immediately eligible to request release on bond or conditional parole. *See* 8 U.S.C. § 1226(a) ("an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States," the Government "*may* continue to detain the arrested alien" or "may release the alien") (emphasis added); *see also* 8 C.F.R. § 1236.1(d). Only under special, limited circumstances does 8 U.S.C. § 1226 mandate detention—namely, subsection (c) provides that the Government "shall take into custody any alien who" has committed certain criminal offenses "when the alien is released . . . for the same offense," subject to narrow exceptions for participants in the witness protection program. 8 U.S.C. § 1226(c).

58.    8 U.S.C. § 1231 mandates detention only during the initial 90-day "removal period," 8 U.S.C. § 1231(a)(1)(A)—the time window during which the Government typically effectuates an individual's removal. The removal period "begins on the latest of the following:

> *i.* The date the order of removal becomes administratively final.
> *ii.*    **If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order**.
> *iii.*    If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement."

*Id.* § 1231(a)(1)(B) (emphasis added).

59.    The removal period may be extended beyond 90 days if the individual "fails or refuses to make timely application in good faith for travel or other documents necessary to [his]

departure or conspires or acts to prevent [his] removal." *Id.* § 1231(a)(1)(C). After the initial

removal period, detention under 8 U.S.C. § 1231 is no longer mandatory: the Government "may"

detain certain "[i]nadmissible or criminal aliens" or individuals determined "to be a risk to the

community or unlikely to comply with the order of removal" beyond the removal period. *Id.* §

1231(a)(6).

60.     If and when the BIA reviews the MTR—provided it corrects the date error, and

properly enters processes his Notice of Appeal—Mr. Lizama Gutierrez will still be detained

under § 1226 pending his appeals process as the order of removal will not be administratively

final.

**B.  Mr. Lizama Gutierrez's Detention is Governed by 8 U.S.C. § 1226 and He is Entitled to an Immediate Bond Hearing.**

61.     Mr. Lizama Gutierrez, whose removal has been stayed by the BIA pending its

review of his Motion to Reconsider, is detained pursuant to 8 U.S.C. § 1226(a); 8 U.S.C. § 1231

does not apply. *Bah,* 409 F. Supp. 3d 464. His detention of nearly two years violates

constitutional due process, entitling him to immediate release in light of COVID-19 or an

immediate bond hearing before an Immigration Judge. *Id.*

62.     Because the BIA granted him a stay of removal, Mr. Lizama Gutierrez's removal

period has not yet begun, and therefore his detention is not governed by 8 U.S.C. § 1231.

According to the plain language of the 8 U.S.C. § 1231, when an individual has been granted a

stay of removal by a circuit court pending judicial review of his removal order, the removal

period has not yet begun. 8 U.S.C. § 1231(a)(1)(B) ("The removal period begins on the latest of

the following: . . . (ii) If the removal order is judicially reviewed and if a court orders a stay of

the removal of the alien, the date of the court's final order."). Therefore, Mr. Lizama Gutierrez's

detention is not yet governed by that statute. It is axiomatic that when a statute is unambiguous,

18

the courts are bound to faithfully apply its plain language. *See Clark v. Absolute Collection Serv.*, 741 F.3d 487, 490 (4th Cir. 2014) ("When the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (quoting *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004)).

63.     8 U.S.C. § 1231 unambiguously states that individuals like Petitioner, who have been granted a stay of removal while seeking judicial review of a removal order, have not yet entered the removal period. It follows naturally that 8 U.S.C. § 1231 cannot govern his detention. *Bah,* 409 F. Supp. 3d 464.

64.     While the Fourth Circuit has not yet addressed this issue, every Circuit to analyze and rule on the matter has agreed with this reading of the statutory scheme. *See Wang v. Ashcroft*, 320 F.3d 130, 147 (2d Cir. 2003); *Leslie v. Att'y Gen.*, 678 F.3d 265, 270 (3d Cir. 2012), *abrogated in part on other grounds by Jennings*, 138 S. Ct. at 847; *Bejjani v. INS*, 271 F.3d 670, 689 (6th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006); *Prieto-Romero v. Clark*, 534 F.3d 1053, 1059 (9th Cir. 2008). As the Third Circuit explained in *Leslie*, "insofar as the purpose of § 1231 detention is to secure an alien pending the alien's certain removal, § 1231 cannot explain nor authorize detention during a stay of removal pending further judicial review." 678 F.3d at 270. Consequently, because 8 U.S.C. § 1231 does not govern detention while an individual's removal is stayed pending circuit court review, the pre-removal period detention statute, 8 U.S.C. § 1226, must control. *See Prieto-Romero*, 534 F.3d at 1059-60; *Wang*, 320 F.3d at 147.

### C. Mr. Lizama Gutierrez's Continued Detention with a Bond Hearing Violates Constitutional Due Process

65.     As Mr. Lizama Gutierrez's detention falls under 8 U.S.C. § 1226, the government may argue that his prolonged detention is mandatory under 8 U.S.C. § 1226(c) based on his

single misdemeanor marijuana possession conviction. Nevertheless, Mr. Lizama Gutierrez's

prolonged detention of almost two years violates his right to constitutional due process. As such,

and in light of the substantial risk he faces of serious illness and/or death if he contracts COVID-

19 as a person with a serious respiratory medical condition, he is entitled to immediate release or,

in the alternative, a bond hearing with the burden of proof on the government to justify continued

detention by clear and convincing evidence and with a requirement that the government consider

alternatives to detention and Mr. Lizama Gutierrez's ability to pay bond.

   *i.   Noncitizens Detained Under § 1226(c) are Entitled to Due Process Protections*

66.      "'It is well established that the Fifth Amendment entitles aliens to due process of

law in deportation proceedings.'" *Demore v. Kim*, 538 U.S. 510, 523 (2003) (addressing a §

1226(c) challenge) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "Freedom from

imprisonment—from government custody, detention, or other forms of physical restraint—lies at

the heart of the liberty" that the Due Process Clause protects. *Zadvydas v. Davis*, 533 U.S. 678,

690 (2001); *see also id*. at 718 (Kennedy, J., dissenting) ("Liberty under the Due Process Clause

includes protection against unlawful or arbitrary personal restraint or detention."). This

fundamental due process protection applies to all noncitizens, including both removable and

inadmissible noncitizens. *See id*. at 721 (Kennedy, J., dissenting) ("both removable and

inadmissible aliens are entitled to be free from detention that is arbitrary or capricious").

67.      In *Jennings v. Rodriguez*, the Supreme Court held that the Ninth Circuit erred in

interpreting 8 U.S.C. §§ 1225(b) and 1226(c) to require bond hearings for detained noncitizens

as a matter of statutory construction. *Jennings*, 138 S.Ct. 830 (2018). The Supreme Court's

opinion; however, did not address whether the Due Process Clause required bond hearings in

cases of prolonged detention and remanded to the Ninth Circuit to address the constitutional question in the first instance. *See id*.

68.     Following *Zadvydas* and *Demore*, every circuit court of appeals to confront the issue has found that due process requires a hearing for noncitizens subject to unreasonably prolonged mandatory detention pending removal proceedings. *See Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018) ("*Jennings* did not call into question our constitutional holding in *Diop* that detention under § 1226(c) may violate Due Process if unreasonably long.") (citing *Diop v. ICE/Homeland Sec.*, 656 F.3d 221 (3d Cir. 2011)); *Sopo v. U.S. Attorney Gen.*, 825 F.3d 1199 (11th Cir. 2016); *Reid v. Donelan*, 819 F.3d 486 (1st Cir. 2016); *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015); *Rodriguez v. Robbins (Rodriguez III)*, 804 F.3d 1060 (9th Cir. 2015); *Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2003).

69.     While the Fourth Circuit has not yet ruled on the question, this Court and the U.S. District Court for the District of Maryland have held that prolonged immigration detention can violate a petitioner's right to due process. *See Bah v. Barr*, 409 F. Supp. 3d 464, 470 (E.D. Va. 2019); *Obando-Segura v. Whitaker*, No. GLR-17-3190, 2019 WL 423412 (D. Md. Feb. 1, 2019); *Portillo v. Hott*, 322 F. Supp. 3d 698 (E.D. Va. 2018); *Mauricio-Vasquez v. Crawford*, No. 1:16cv01422, 2017 WL 1476349 (E.D. Va. Apr. 24, 2017); *Haughton v. Crawford*, No. 1:16-cv-634, 2016 WL 5899285 (E.D. Va. Oct. 7, 2016); *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 710 (D. Md. 2016).

70.     This Court has adopted a five-factor balancing test for determining whether prolonged detention violates Due Process. The five factors are: "(1) the duration of detention, including the anticipated time to completion of the alien's removal proceedings; (2) whether the civil detention exceeds the criminal detention for the underlying offense; (3) dilatory tactics

employed in bad faith by the parties or adjudicators; (4) procedural or substantive legal errors

that significantly extend the duration of detention; and (5) the likelihood that the government will

secure a final removal order." *Portillo v. Hott*, 322 F. Supp. 3d 698, 707 (E.D. Va. 2018); *see*

*also Bah*, 409 F. Supp. 3d at 471 n.9; *Mauricio-Vasquez v. Crawford*, No. 1:16cv01422, 2017

WL 1476349, at *4-5 (E.D. Va. Apr. 24, 2017); and *Haughton v. Crawford*, No. 1:16-cv-634,

2016 WL 5899285, at *8-10 (E.D. Va. Oct. 7, 2016)).

>         i.   *Mr. Lizama Gutierrez's Detention Has Been Unconstitutionally Prolonged*

     71.      All of the *Portillo* factors that are present in this case weigh in Mr. Lizama

Gutierrez's favor. The first factor—"the most important"—is given significant weight. *Portillo*,

322 F. Supp. 3d at 707 (internal quotations omitted). *See, e.g., Bah*, 409 F. Supp. 3d at 471 n.9;

*Mauricio-Vasquez*, 2017 WL 1476349 at *4. At 22 months and counting, the duration of Mr.

Lizama Gutierrez's detention is unconstitutionally prolonged and already more than triple the

six-month mark at which detention is, at the very least, increasingly suspect. *See Demore*, 538

U.S. at 529-30 (upholding only "brief" detentions under § 1226(c), which last "roughly a month

and a half in the vast majority of cases in which it is invoked, and about five months in the

minority of cases in which the alien chooses to appeal"); *Zadvydas*, 533 U.S. at 701 ("Congress

previously doubted the constitutionality of detention for more than six months"); *Diop*, 656 F.3d

at 234; *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 473-75 (3d Cir. 2015),

*abrogated on other grounds by Jennings*, 138 S. Ct. at 847 (holding that petitioner detained

under § 1226(c) for *one* year must receive a bond hearing); *see also McNeil v. Dir., Patuxent*

*Inst.,* 407 U.S. 245, 249, 250-52 (1972) (recognizing six months as an outer limit for

confinement without individualized inquiry for civil commitment).[9] Moreover, the anticipated time to completion of his removal proceedings further weighs in Mr. Lizama Gutierrez's favor. This anticipated time includes not only the unquantified time the BIA may take to decide on his MTR which has been pending for 11 months—whether by its own cognition or as compelled by this Court. If and when the MTR is likely granted based on the simple and demonstrable calculation error committed by the agency in dismissing the appeal, the actual appeal process would entail at a minimum several months of additional time to complete, and there is a strong probability that it will take longer.[10]

72.     The second factor—weighing the length of civil detention against criminal detention for the underlying offense—favors Mr. Lizama Gutierrez's due process interests with equal clarity.[11]   The civil consequence leveraged by the Respondents is grossly disproportionate to the criminal penalty for the underlying offense. While Mr. Lizama Gutierrez's civil detention is fast approaching the two-year mark, the criminal consequence for his misdemeanor marijuana possession conviction was a $100 fine and a six-month suspension of his driver's license. Even at the time, the maximum penalty he could have received was limited to 30 days in jail and a fine

---

[9] Courts have acknowledged that "the constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past those thresholds" indicated by both Congress and the Supreme Court (which amount, ultimately, to six months). *Diop*, 656 F.3d at 234.

[10] *See* Executive Office of Immigration Review, PM 20-01, Case Processing at the Board of Immigration Appeals (Oct. 1, 2019), https://www.justice.gov/eoir/page/file/1206316/download (noting only declines and plateaus in efficiency at the BIA coupled with "disconcertingly … few clear steps to address that situation" and urging, but not mandating, single Board members to adjudicate appeals within 90 but no longer than 230 days and three-member panels to do so within 180 but no longer than 355 days after filing the Notice of Appeal).

[11] Similarly, the Eleventh Circuit and the District Court for the District of Maryland have both considered whether the facility for the civil immigration detention is meaningfully different form a penal institution for criminal detention. *See, e.g., Sopo*, 825 F.3d at 1219; *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 717 (D. Md. Sept. 30, 2016). Farmville Detention Center is a jail setting.

of $500. VA. CODE ANN. § 18.2-250.1 (West 2019). Moreover, earlier this year, Virginia signed new legislation into effect that completely removes the criminal penalty for simple possession of marijuana, which now only carries a $25 civil penalty. 2020 Va. Acts. Ch. 1285 (H.B. 972).

73.     The third factor—dilatory tactics—is of limited import, as Mr. Lizama Gutierrez makes no allegation of bad faith. "But," as this Court has cautioned when analyzing this third factor in the past, "the central constitutional concern is the reasonableness of detention and 'due process demands a better answer than 'we haven't gotten to it yet.''" *Haughton*, 2016 WL 5899285 at *9 (internal citation omitted).

74.     The fourth factor, weighs strongly in Mr. Lizama Gutierrez's favor. The delay in Mr. Lizama Gutierrez's proceedings that has been ongoing for almost a year is the result of a procedural legal error: the Board's erroneous clerical mistake in dismissing Mr. Lizama-Gutierrez's appeal as untimely based on the mistaken belief that the IJ's written decision had been mailed on May 7, instead of May 8. *See* Exh. C.

75.     Finally, the fifth factor— the likelihood that the government will secure a final removal order—is for the reasons outlined above, purely speculative and unlikely.

76.     Under this Court's *Portillo* factors, Mr. Lizama Gutierrez detention is unreasonable and unconstitutional.

### D. Mr. Lizama Gutierrez is Entitled to Immediate Release or a Bond Hearing

77.     When detention becomes unreasonable—in other words, "when the burden to an alien's liberty outweighs a mere presumption that the alien will flee and/or is dangerous"—Due Process concerns arise. *Chavez-Alvarez v*, 783 F.3d at 475. In the immigration context, the Supreme Court has recognized only two valid purposes for civil detention—to mitigate the risks of danger to the community and to prevent flight. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

Mr. Lizama Gutierrez's ongoing deprivation of liberty is not sufficiently related to either of these governmental purposes, and because he has not been afforded the necessary procedural safeguards, his detention violates due process. This Court should order his immediate release.

78.     In the alternative, due process demands an individualized hearing, among other procedural safeguards to protect against the unconstitutional deprivation of liberty interests. These procedural safeguards include, *inter alia*, the requirements that the government must prove by clear and convincing evidence that detention is still necessary to fulfill the statute's purposes, and it must do so by clear and convincing evidence that the person is a flight risk and/or a danger to the community; that alternatives to detention be considered; and that the noncitizen's ability to pay bond be considered.

*ii. The Government Must Prove Otherwise by Clear and Convincing Evidence*

79.     In addition to an individualized hearing before a neutral decision-maker, due process requires the Government to provide Mr. Lizama Gutierrez with other procedural safeguards to protect against the erroneous deprivation of liberty. Should the Court determine that Mr. Lizama Gutierrez's due process rights require an individualized bond hearing before an immigration judge, the Court must place the burden of proof by clear and convincing evidence on the Government to demonstrate that he is a danger or flight risk. *See United States v. Salerno*, 481 U.S. 739, 750, 752 (1987) (upholding pre-trial detention where "full-blown adversary hearing," requiring "clear and convincing evidence" and "neutral decision maker"); *Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992) (striking down civil detention scheme that placed burden on the detainee); *Zadvydas*, 533 U.S. at 692 (finding post-final-order custody review procedures deficient because, inter alia, they placed burden on detainee).

80.    Where a noncitizen has been subject to mandatory detention for periods comparable to Mr. Lizama Gutierrez's time in detention, this Court has ordered individualized bond hearings in which the Government bears the burden by clear and convincing evidence of showing the necessity of continued detention. *See Bah*, 409 F. Supp. 3d at 472 (placing the evidentiary burden of production on the noncitizen but noting "As a matter of Due Process, the government bears the ultimate burden of persuasion."); *Portillo*, 322 F. Supp. 3d at 709-710; *Haughton*, No. 1:16-cv-634, at *22; *but see Mauricio-Vasquez v. Crawford*, No. 1:16cv01422, 2017 WL 1476349 (E.D. Va. Apr. 24, 2017). Several other courts have similarly placed the burden on the government. *See, e.g., Obando-Segura*, No. GLR-17-3190, at *9; *Jarpa*, 211 F. Supp. 3d at 721; *Diop*, 656 F.3d at 233; *Reid*, 390 F. Supp. 3d at 228; *Lora*, 804 F.3d at 616; *Rodriguez*, 804 F.3d at 1087; *Dukuray v. Decker*, 18 CV 2898 (S.D.N.Y. Oct. 25, 2018); *Brissett v. Decker*, 324 F. Supp. 3d 444 (S.D.N.Y. 2018); *Gordon v. Shanahan*, No. 15-cv-261, 2015 WL 1176706 (S.D.N.Y. Mar. 13, 2015); *Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533 (S.D.N.Y. 2014); *Francois v Napolitano*, No. 12-2806, 2013 WL 4510004 (D.N.J. Aug. 23, 2013); *Martinez v. Muller*, No. 12-1731, 2012 WL 4505895 (D.N.J. Sept. 25, 2012). In fact, a growing chorus of courts have recognized that in *any* individualized bond hearing held under 8 U.S.C. § 1226(a), the burden is on the Government to justify continued detention. *See, e.g., Dubon Miranda v. Barr*, No. 20-1110, 2020 WL 2794488 at *9 (D. Md. May 9, 2020); *Brito v. Barr*, 415 F. Supp. 3d 258, 267 (D. Mass. 2019), *appeal docketed*, No. 20-1119 (1st Cir. 2020); *Darko v. Sessions*, 342 F. Supp. 3d 429, 435 (S.D.N.Y. 2018) (noting "there has emerged a consensus view that where . . . the government seeks to detain a [noncitizen] pending removal proceedings, it bears the burden of proving that such detention is justified" under § 1226(a) and collecting cases); *Pensamiento v. McDonald*, 315 F. Supp. 3d 684, 692–93 (D. Mass.), *appeal dismissed by*

*gov't*, No. 18-1691 (1st Cir. Dec. 26, 2018); *Guerrero v. Decker*, No. 19 CIV 11644 (KPF), 2020

WL 1244124, at *3–4 (S.D.N.Y. Mar. 16, 2020); *Aparicio-Villatoro v. Barr*, No. 6:19-cv-06294-

MAT, 2019 WL 3859013, at *6 (W.D.N.Y. Aug. 16, 2019); *Arellano v. Sessions*, No. 6:18-cv-

06625-MAT, 2019 WL 3387210, at *11 (W.D.N.Y. July 26, 2019); *Diaz-Ceja v. McAleenan*,

No. 19-cv-00824-NYW, 2019 WL 2774211, at *10–12 (D. Colo. July 2, 2019); *Velasco Lopez v.

Decker*, 19-cv-2912, 2019 WL 2655806 (ALC), at * 3 (S.D.N.Y. May 15, 2019), *appeal

docketed*, No. 19-2284 (2d Cir. 2019).

81.     "[I]n light of the ongoing infringement of the alien's liberty interest and the

strong tradition that the burden of justifying civil detention falls on the government," Mr. Lizama

Gutierrez's continued civil detention under 8 U.S.C. § 1226 can pass constitutional muster only

if the Government bears the burden of proving by clear and convincing evidence that Mr. Lizama

Gutierrez presents a risk of flight or a danger to the community. *Portillo*, 322 F. Supp. 3d at 709.

82.     In *Obando-Segura*, the Maryland district court provided four reasons as to why

the burden of proof for bond hearings for individuals in prolonged detention under 8 U.S.C. §

1226(c) must be placed on the government by clear and convincing evidence. *See Obando-

Segura*, No. GLR-17-3190, at *7. First, the court stated that 8 C.F.R. § 236.1(c)(8), which places

the burden of proof in bond hearings on the individual, dictates the burden of proof for

immigrants detained under 8 U.S.C. § 1226(a) (where the Attorney General exercises his

discretion in detaining the individual), does not apply in cases of mandatory detention under 8

U.S.C. § 1226(c) where no individualized bond determination is made prior to prolonged

detention. Second, the court reiterated that a bond hearing under 8 U.S.C. § 1226(c) as a

necessity to avoid due process concerns removes it from 8 C.F.R. § 236.1(c)(8), where the

Attorney General's discretion presumes the detention to be consistent with due process. *Id*. at *7-

8. Third, the court stated that placing the burden on an individual in mandatory detention raising due process concerns would "run contrary to the Court's determination on the unconstitutionality of his continued detention absent a hearing." *Id*. at *4 (quoting *Jarpa*, 211 F. Supp. 3d at 722-723). Finally, placing the burden of proof on an individual in mandatory detention imposes a "special unfairness" on the detained individual. *Id*. (citation omitted). An individual's prolonged detention as the court went on to state "compromises his ability to gather the evidence he needs to complete his . . . application and may also affect his ability to prepare for his [hearings]." *Id*.

83.     To place the burden on Mr. Lizama Gutierrez at a bond hearing ordered as a result of a violation of his constitutional rights would be "inconsistent with having found his continued detention unconstitutional." *Jarpa*, 211 F. Supp. 3d at 722. Requiring Mr. Lizama Gutierrez to prove "that he is neither a flight risk nor a danger would also logically mean that he is presumed validly and constitutionally detained unless he demonstrates otherwise. *Id*. In order to "ensure [the protection of Mr. Lizama Gutierrez's] liberty interests are wholly protected and practically effectuated," the court must require the Government to justify confinement by clear and convincing evidence. *Id*. at 723 (quotations omitted).

*iii. The Government Must Consider the Available Alternatives to Detention*

84.     Due process also requires consideration of alternatives to detention. The primary purpose of immigration detention is to ensure a noncitizen's appearance during removal proceedings. *Zadvydas*, 533 U.S. at 697. Detention is not reasonably related to this purpose if there are alternative conditions of release that could mitigate risk of flight. *See Bell v. Wolfish*, 441 U.S. 520, 538 (1979). ICE's alternatives to detention program—the Intensive Supervision Appearance Program—has achieved extraordinary success in ensuring appearance at removal proceedings, reaching compliance rates close to 100 percent. *Hernandez v. Sessions*, 872 F.3d

976, 991 (9th Cir. 2017) (observing that ISAP "resulted in a 99% attendance rate at all EOIR hearings and a 95% attendance rate at final hearings"). It follows that alternatives to detention must be considered in determining whether prolonged incarceration is warranted.

    *iv. Mr. Lizama Gutierrez's Ability to Pay Must be Taken into Account*

85.      Finally, if the government cannot meet its burden of proof and justify continued detention, due process warrants an additional protection: that the noncitizen's ability to pay a bond be considered in determining the appropriate conditions of relief. As a the possibility of a high bond amount that is not reasonably related to the purpose for confinement would mean "[h]e is effectively detained without bond due to [his] financial circumstances" and defeat the purpose for this Court to order an individualized bond hearing in the first place. *Dubon Miranda v. Barr*, ___F.Supp.3d ___, *11, 2020 WL 2794488, ECF No. 25 (D.Md. May 29, 2020) (Preliminary Injunction placing the burden on the government to prove flight risk and danger to the community and requiring an Immigration Judge to consider inability to pay and alternatives to detention).

## II.    The Board of Immigration Appeals' Inaction on Mr. Lizama Gutierrez's Motion to Reconsider Violates the Administrative Procedures Act

### A.  Jurisdiction, Cause of Action, and Mandamus

86.      This Court has subject matter jurisdiction under both 28 U.S.C. § 1331, the federal question statute, and 28 U.S.C. § 1361, the mandamus statute. Mandamus "may be invoked only where three elements co-exist: (1) the petitioner has shown a clear right to the relief sought; (2) the respondent has a clear duty to do the particular act requested by the petitioner; and (3) no other adequate remedy is available." *In re First Fed. Sav. & Loan Ass'n of Durham*, 860 F.2d 135, 138 (4th Cir. 1988).

87.     The Administrative Procedures Act ("APA") provides a basis for suit when an agency unreasonably delays action or fails to act, and therefore supports a cause of action. 5 U.S.C. §§ 555(b), 706(1); *see Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 77-78 (D.C. Cir. 1984) ("TRAC") ("[S]ection 706(1) coupled with section 555(b) does indicate a congressional view that agencies should act within reasonable time frames and that courts designated by statute to review agency actions may play an important role in compelling agency action that has been improperly withheld or unreasonably delayed."). Section 555(b) states that agencies should conclude matters "within a reasonable time," and Section 706(1) states that courts "shall ... compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §§ 555(b), 706(1). Moreover, an agency's failure to act can become a final agency action "if the agency delays unreasonably in responding to a request for action." *See, e.g., Gordon v. Norton*, 322 F.3d 1213, 1220 (10th Cir. 2003). Such is the case here, and the BIA's refusal to address the Motion to Review for over eleven months and counting thus constitutes final agency action reviewable as "unlawfully withheld or unreasonably delayed."

**B. The Board of Immigration Appeal's Inaction is Unreasonable and Improper**

88.     The following factors, known as the "TRAC" factors, often guide whether agency inaction is reasonable:

> *i.* The time agencies take to make decisions must be governed by a "rule of reason";
> *ii.*     where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> *iii.*     delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> *iv.*     the Court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> *v.*     the Court should also take into account the nature and extent of the interests prejudiced by delay;

> *vi.*   the Court should not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably denied.

*Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("TRAC"). This Court has also adopted the TRAC factors in the past. *E.g. Asslam v. Mukasey*, 531 F. Supp. 2d 736, 744 (E.D. Va. 2008); *Assadi v. Beers*, No. 1:13–cv–01253 (AJT/TRJ), 2014 WL 12775195, at *6 (E.D. Va. Feb. 12, 2014).

89.     The first factor weighs heavily in favor of finding the delay in processing the MTR unreasonable. In evaluating this factor, "[a]n agency must be given adequate time to complete an adjudication that is complex or labor intensive," but the MTR presents neither challenge. *Asslam*, 541 F. Supp. 2d at 743. The MTR simply asks the BIA to acknowledge its own clear clerical mistake and reconsider its dismissal of Mr. Lizama Gutierrez's Notice of Appeal. To support this ask the MTR has presented the Board with undisputed evidence that it needs in order to adjudicate the motion. *See* Exh. C (including a copy of the postmarked envelope sent by the Immigration Court).

90.     As to the second factor, although there is no statutory or regulatory deadline for Motions to Review—as the BIA has pointed out in response to counsel's requests for updates— the absence of a deadline does not confer the right to postpone a decision indefinitely. Although Congress did not provide a timetable for the review of MTR's, the EOIR's own memorandum urging the BIA to complete the entire appeals within a maximum of 355 days calls into sharp relief that the MTR has taken even longer to review. *See* n.2, *infra*.

91.     Likewise, the third factor and fifth factors underscore the unreasonableness of the BIA's delay. The unanswered MTR has left Mr. Lizama Gutierrez in limbo. For as long as the BIA refuses to correct its error, and unless and until this Court grants Mr. Lizama Gutierrez's petition for a writ of habeas corpus, his only other option is to expedite deportation by foregoing

his stay of removal. He deserves and is holding onto the chance to appeal the order of removal and prove himself eligible for asylum, withholding of removal, or protection under the Convention Against Torture—a right which he is categorically preventing from doing so as long as the BIA refuses to review the MTR— and concede it's own clerical error. The BIA's delay is patently "less tolerable" in a situation like Mr. Lizama Gutierrez's, per the third factor, and, per the fifth factor, the nature and extent of the interests prejudiced by the delay are a matter of life, liberty, and livelihood, each effectively stripped away by the BIA's inaction.

92.     Finally, the fourth factor is often elevated in *TRAC* analyses, but is uncompelling here. The MTR is a simple request to correct a readily demonstrated clerical mistake and reverse the dismissal of Mr. Lizama Gutierrez's appeal. It does not position him ahead of other appellees and does not mean that he will automatically succeed on the merits of his appeal. Nor does it demand great resources or effort on the part of the BIA, although it should be noted that "[b]ureaucratic inadequacy is not a justification, especially because the costs of noncompliance are imposed on the applicant." *Aslam*, 531 F. Supp. 3d at 744. And the cost in this case, Mr. Lizama's liberty and the effect this has had on his mental and physical health is great.

93.     For the foregoing reasons, the BIA's delay is unreasonable final action subject to review under and in violation of the Administrative Procedures Act, and the BIA should be compelled to act on Mr. Lizama-Gutierrez's MTR.

**I.     Due Process Requires Mr. Lizama Gutierrez's Immediate Release Because of His Punitive Conditions of Confinement and Respondents' Deliberate Indifference to His Substantial Risk of Harm**

**A.  Mr. Lizama Gutierrez Has a Right to be Free from Punitive Conditions of Confinement in Civil Detention.**

94.     The government has a duty to provide conditions of reasonable health and safety to individuals in their custody. As the Supreme Court has explained, "when the State takes a

person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago County Dept. of Soc. Servs.,* 489 U.S. 189, 199-200 (1989). As a result, the government must provide those in its custody with "food, clothing, shelter, medical care, and reasonable safety." *Id.* at 200.

95.     Conditions that pose an unreasonable risk of future harm violate the Eighth Amendment's prohibition against cruel and unusual punishment, even if that harm has not yet come to pass. *See Helling v. McKinney,* 509 U.S. 25, 33 (1993) ("It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them.").

96.     The Supreme Court has explicitly recognized that the risk of contracting a communicable disease may constitute such an "unsafe, life-threatening condition" that threatens "reasonable safety" even under the higher standard imposed by the Eighth Amendment. *Id.*

97.     Because persons in immigration detention are civilly confined, their constitutional protections are derived from the Fifth Amendment, which provides greater protections than the Eighth Amendment. Under the Fifth Amendment, persons who, like Plaintiffs, are held in civil detention are entitled to "more considerate treatment and conditions of confinement" than persons who are incarcerated because of a criminal conviction. *Youngberg v. Romeo*, 457 U.S. 307, 322 (1982). Due process rights of those in civil immigration detention "are *at least as great* as the Eighth Amendment protections" available to those convicted of a crime. *City of Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244 (1983) (emphasis added); *see also Zadvydas v. Davis,* 533 U.S. 678, 690 (2001) (classifying immigration detention as civil detention).

98.     The Eighth Amendment, which applies to persons convicted of criminal offenses, allows punishment as long as it is not cruel and unusual, but the Fifth Amendment's due process protections do not allow punishment at all. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) ("Due process requires that a pretrial detainee not be punished."); *Nelson v. Collins*, 659 F.2d 420, 425 (4th Cir. 1981).

99.     In order to establish that a particular condition of detention constitutes impermissible punishment, a plaintiff must show either an expressed intent to punish, or a lack of a reasonable relationship to a legitimate governmental purpose, from which an intent to punish may be inferred. *See Wolfish*, 441 U.S. at 538; *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). Absent an explicit intention to punish a detained person, a court "must evaluate the evidence and ascertain the relationship between the actions taken against the detainee and the custodian's supporting rationale." *Williamson v. Stirling*, 912 F.3d 154, 178 (4th Cir. 2018). "That inquiry turns on whether the actions taken may validly be attributed to an alternative, nonpunitive rationale, and whether they appear 'excessive in relation to the alternative purpose assigned.'" *Id*. (citations omitted).

### A. Respondents May Not Act with Deliberate Indifference to a Substantial Risk of Harm Faced by Mr. Lizama Gutierrez.

100.     The Fourth Circuit has held that a person held in pretrial detention necessarily "makes out a due process violation if he shows 'deliberate indifference to serious medical needs'. . . because no legitimate nonpunitive goal is served by a denial or unreasonable delay in providing medical treatment where the need for such treatment is apparent." *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988) (citation omitted)).

101.     In order to show that defendants acted with deliberate indifference, a plaintiff must show that (1) the plaintiff was exposed to a substantial risk of serious harm, and (2) the

defendants knew of or disregarded that substantial risk to the plaintiff's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 837–38 (1994); *Thompson v. Virginia*, 878 F.3d 89, 97-98 (4th Cir. 2017).

102.    A plaintiff "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or *substantial risk* of either injury. *Danser v. Stansberry*, 772 F.3d 340, 346-47 (4th Cir. 2014). Such a claim "may be based on a defendant's conduct in exposing an inmate to an unreasonable risk of future harm." *Smith v. Carpenter*, 316 F.3d 178, 188 (2d Cir. 2003).

103.    A plaintiff must also show that the prison or detention official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the detainee's safety, or evidence that detention officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn. *Id*. at 837. A plaintiff may "prove an official's actual knowledge of a substantial risk 'in the usual ways, including inference from circumstantial evidence'" so that "'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Raynor v. Pugh*, 817 F.3d 123, 128 (4th Cir. 2016).

### A. Mr. Lizama Gutierrez Has a Right to Reasonable Accommodations Under the Rehabilitation Act.

104.    Section 504 of the Rehabilitation Act requires executive agencies to provide "reasonable accommodations" to individuals with disabilities so they can fully participate in benefits administered by these agencies. 29 U.S.C. § 794(a).

105.     DHS regulations implementing the Rehabilitation Act mandate that "[n]o qualified individual with a disability in the United States, shall, by reason of his or her disability, be excluded from participation in, be denied benefits of, or otherwise be subjected to discrimination under any program or activity conducted by the Department." 6 C.F.R. § 15.30.

106.     To state a claim under the Rehabilitation Act, a plaintiff must establish "(1) that he has a disability; (2) that he is otherwise qualified for the benefit in question; and (3) that he was excluded from the benefit due to discrimination solely on the basis of the disability." *Baird v. Rose,* 192 F.3d 462, 467 (4th Cir. 1999).

107.     To the extent possible, the Americans with Disabilities Act ("ADA") and the Rehabilitation Act should be construed to impose similar requirements; therefore, they require a plaintiff to demonstrate the same elements to establish liability. *Halpern v. Wake Forest Univ. Health Scis.,* 699 F.3d 454 (4th Cir. 2012).

108.     A qualifying disability is any physical or mental impairment that "substantially limits one or more major life activities." 42 U.S.C. § 12102; *see also* 29 U.S.C. § 705; 6 C.F.R. § 15.3(d). A "major life activity" includes "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working" as well as "the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. § 12102(A)-(B).

109.     The ADA mandates that "[t]he definition of disability . . . be construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms of [the statute]." 42 U.S.C. § 12102(4)(A).

110.     The Fourth Circuit has determined that a temporary impairment may qualify as a disability under the ADA if it is "sufficiently severe" to substantially limit a major life activity. *Summers v. Altarum Inst.,* 740 F.3d 325 (4th Cir. 2014).

111.     The Rehabilitation Act provides for "reasonable accommodations" to ensure that individuals are not deprived of access to federally-administered benefits because of their disability. Because there is no reasonable accommodation available to protect vulnerable individuals from contracting COVID-19, and thereby being denied access to removal proceedings due to serious illness or even death, release is the only sufficient accommodation available.

**B.  This Court Has the Authority to Order Mr. Lizama Gutierrez' Release to Protect His Constitutional and Statutory Rights.**

112.     "A district court enjoys wide discretionary authority in formulating remedies for constitutional violations." *Smith v. Bounds*, 813 F.2d 1299, 1301 (4th Cir. 1987). Moreover, "[w]hen necessary to ensure compliance with a constitutional mandate, courts may enter orders placing limits on a prison's population." *Brown v. Plata*, 563 U.S. 493, 511 (2011).

113.     Although the Fourth Circuit has not had occasion to address this issue, courts in other circuits have exercised the authority to order release as a remedy for constitutional violations. *See, e.g., Duran v. Elrod,* 713 F.2d 292, 297-98 (7th Cir. 1983), *cert. denied,* 465 U.S. 1108 (1984) (concluding that court did not exceed its authority in directing release of low-bond pretrial detainees as necessary to reach a population cap).

114.     In light of the severe threats posed by COVID-19, a growing number of courts have also ordered the release of persons detained in immigration detention. *See e.g.*, *Xochihua-James v. Barr*, No. 18-71460 (9th Cir. Mar. 23, 2020) (unpublished) (sua sponte releasing detainee from immigration detention "in light of the rapidly escalating public health crisis");

*Hope v. Doll*, 1:20-cv-00562-JEJ, No. 1:20-cv-562, Dkt. No. 11 (M.D. Pa. Apr. 7, 2020)

(granting TRO releasing high-risk individuals in immigration detention due to the dangers of

COVID-19); *Hernandez v. Wolf*, 5:20-cv-00617-TJH-KS, Dkt. No. 17 (C.D. Cal. Apr. 1, 2020);

*Castillo v. Barr*, 20-cv-00605-TJH, Dkt. No. 32 (C.D. Cal. Mar. 27, 2020) (same); *Coronel v.

Decker*, 20-cv-2472-AJN, Dkt. No. 26 (S.D.N.Y. Mar. 27, 2020) (same); *Basank v. Decker*, 20-

cv-2518-AT, Dkt. No. 11 (S.D.N.Y. Mar. 26, 2020) (same); *Fraihat v. Wolf*, 20-cv-00590-TJH-

KSx (C.D. Cal. Mar. 31, 2020) (same); *Thakker v. Doll*, 1:20-cv-00480-JEJ, Dkt No. 47 (M.D.

Pa. Mar. 31, 2020) (ordering releases from two facilities in Pennsylvania lacking confirmed

cases); *see also Ronal Umana Jovel v. Decker*, 12-cv-308-GBD, Dkt. No. 27 (S.D.N.Y. Mar. 26,

2020) (ordering release under *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001)); *Jimenez v. Wolf*, 18-

10225-MLW (D. Mass. Mar. 26, 2020) (same).

115.     Courts have similarly released numerous individuals held or incarcerated under

the federal criminal system. *See e.g.*, *United States v. Meekins*, Case No. 1:18-cr-222-APM, Dkt.

No. 75 (D.D.C. Mar. 31, 2020) (post-plea, pre-sentence release order releasing defendant with

three pending assault charges due to extraordinary danger COVID-19 poses to people in

detention); *United States v. Davis*, No. 1:20-cr-9-ELH, Dkt. No. 21 (D. Md. Mar. 30, 2020)

(releasing defendant due to the "urgent priority" of decarcerating, to protect both the defendant

and the community, and to preserve Sixth Amendment rights in this perilous time); *United States

v. Muniz*, Case No. 4:09-cr-199, Dkt. No. 578 (S.D. Tex. Mar. 30, 2020) (releasing defendant

serving 188-month sentence for drug conspiracy in light of vulnerability to COVID-19: "[W]hile

the Court is aware of the measures taken by the Federal Bureau of Prisons, news reports of the

virus's spread in detention centers within the United States and beyond our borders in China and

Iran demonstrate that individuals housed within our prison systems nonetheless remain

particularly vulnerable to infection."); *United States v. Hector*, Case No. 2:18-cr-3-002, Dkt. No. 748 (W.D. Va. Mar. 27, 2020) (granting release pending sentencing after Fourth Circuit remanded detention decision requiring court to specifically consider extraordinary danger posed by COVID-19 to folks in prison); *United States v. Grobman*, No. 18-cr-20989, Dkt. No. 397 (S.D. Fla. Mar. 29, 2020) (releasing defendant convicted after trial of fraud scheme in light of "extraordinary situation of a medically-compromised detainee being housed at a detention center where it is difficult, if not impossible, for [the defendant] and others to practice the social distancing measures which government, public health and medical officials all advocate"); *United States v. Mclean*, No. 19-cr-380, Dkt. No. (D.D.C. Mar. 28, 2020) ("As counsel for the Defendant candidly concedes, the facts and evidence that the Court previously weighed in concluding that Defendant posed a danger to the community have not changed - with one exception. That one exception - COVID-19 - however, not only rebuts the statutory presumption of dangerousness, see 18 U.S.C. § 3142(e), but tilts the balance in favor of release."); *United States v. Harris*, No. 19-cr-356 (D.D.C. Mar. 26, 2020) ("The Court is convinced that incarcerating Defendant while the current COVID-19 crisis continues to expand poses a far greater risk to community safety than the risk posed by Defendant's release to home confinement on . . . strict conditions."); *In re Request to Commute or Suspend County Jail Sentences*, Docket No. 084230 (N.J. Mar. 22, 2020) (releasing large class of defendants serving time in county jail "in light of the Public Health Emergency" caused by COVID-19).

116.    The unprecedented coronavirus pandemic unquestionably calls for Mr. Lizama Gutierrez's release, as multiple health experts have opined, and numerous courts have recognized, that no other measures would be sufficient or appropriate, especially for individuals with special vulnerability to severe illness or death from COVID-19 like him.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF: VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION
### (Against Respondents Wolf, Albence, Hott, and Crawford)

117.   Mr. Lizama Gutierrez re-alleges and incorporates by reference the paragraphs above.

118.   The Due Process Clause of the Fifth Amendment forbids the Government from depriving any person of liberty without due process of law. U.S. CONST. amend. V.

119.   To justify Mr. Lizama Gutierrez's ongoing prolonged detention, due process requires that the government establish, at an individualized hearing before a neutral decision-maker, that Mr. Lizama Gutierrez's detention is justified by clear and convincing evidence of flight risk or danger to the community, even after consideration whether alternatives to detention could sufficiently mitigate that risk, and taking into account his ability to pay bond.

120.   Mr. Lizama Gutierrez's prolonged detention without a constitutionally adequate bond hearing for nearly two years, which will potentially continue for many additional months or even years as the Motion to Review upon which his appeal of his removal order is predicated remains pending and as he pursues that appeal, is not reasonably related to the immigration detention statute's purpose of ensuring his appearance during removal proceedings or preventing danger to the community, and therefore violates the Due Process Clause.

121.   Nor has Mr. Lizama Gutierrez been afforded the necessary procedural safeguards to guarantee against the erroneous deprivation of his liberty, especially as his detention continues indefinitely and grows increasingly prolonged.

122.   For these reasons, Mr. Lizama Gutierrez's detention violates constitutional due process.

**SECOND CLAIM FOR RELIEF: VIOLATION OF THE ADMINISTRATIVE
PROCEDURES ACT
(Against Respondent the Board of Immigration Appeals)**

123.     Mr. Lizama Gutierrez re-alleges and incorporates by reference the paragraphs

above.

124.     The Administrative Procedures Act compels agencies to act within a reasonable

time, and unreasonable delay or failure to do so violates the Act and is subject to judicial review.

5 U.S.C. §§ 555(b), 706(1).

125.     The Board of Immigration Appeals' ongoing delay in reviewing Mr. Lizama

Gutierrez's Motion to Review is unreasonable. The delay is not governed by any rule of reason,

places human health and welfare at risk, concerns an easily resolved and not complex matter

whose resolution will not detract from other agency priorities, and deeply prejudices Mr. Lizama

Gutierrez's right to appeal and, ultimately, his opportunity to rejoin society as a productive

member.

126.     For these reasons, the BIA's delay violates the Administrative Procedures Act.

**THIRD CLAIM FOR RELIEF: VIOLATION OF FIFTH AMENDMENT
RIGHT TO SUBSTANTIVE DUE PROCESS (UNLAWFUL PUNISHMENT)**

127.     The Fifth Amendment to the U.S. Constitution guarantees civil detainees,

including immigration detainees, the right to be free from punitive conditions of confinement.

The government violates this guarantee when conditions of confinement lack a reasonable

relationship to any legitimate governmental purpose, *i.e.* when a custodian's actions are

excessive in relation to their purpose.

128.     Respondents have subjected Petitioner to conditions of confinement that increase

their risk of contracting COVID-19, for which there is no known vaccine, treatment, or cure.

Petitioner's underlying condition—of which Respondents are or should be aware—render him especially vulnerable to severe illness or even death if he contracts COVID-19. Defendants are therefore subjecting Petitioner to an unreasonable risk of serious harm and punitive conditions, in violation of his rights under the Due Process Clause.

129.     Respondents' continued detention of Petitioner fails to adequately protect Petitioner from the risks of contracting COVID-19.

130.     Petitioner's ongoing confinement lacks a reasonable relationship to any legitimate governmental purpose or is excessive in relation to its purpose.

131.     Respondents continued detention of Petitioner is punitive and therefore violates the Due Process Clause.

### FOURTH CLAIM FOR RELIEF: VIOLATION OF FIFTH AMENDMENT RIGHT TO SUBSTANTIVE DUE PROCESS (DELIBERATE INDIFFERENCE)

132.     The Fifth Amendment to the U.S. Constitution guarantees civil detainees, including immigration detainees, the right to be free from punitive conditions of confinement. The government violates this guarantee when it acts with deliberate indifference when failing to safeguard the health and safety of those in its custody.

133.     The government acts with deliberate indifference when it exposes detainees to a substantial risk of serious harm, and when it knows of or disregards that substantial risk to the detainee's health or safety.

134.     Respondents have subjected Petitioner to conditions of confinement that increase his risk of contracting COVID-19, for which there is no known vaccine, treatment, or cure. Petitioner's underlying conditions render him especially vulnerable to severe illness or death if

he were to contract COVID-19. Respondents are therefore subjecting Petitioner to a substantial risk of serious harm.

135.     Respondents have known of or disregarded the substantial risk of harm to Petitioner's health and safety.

136.     Respondents have acted with deliberate indifference to Petitioner's health and safety, in violation of the Due Process Clause.

### FIFTH CLAIM FOR RELIEF: VIOLATION OF THE REHABILITATION ACT (FAILURE TO PROVIDE REASONABLE ACCOMMODATION TO PERSONS WITH DISABILITIES)

137.     Section 504 of the Rehabilitation Act requires federal agencies to provide "reasonable accommodations" to individuals with disabilities so they can fully participate in benefits administered by these agencies. 29 U.S.C. § 794(a).

138.     DHS regulations implementing the Rehabilitation Act mandate that "[n]o qualified individual with a disability in the United States, shall, by reason of his or her disability, be excluded from participation in, be denied benefits of, or otherwise be subjected to discrimination under any program or activity conducted by the Department." 6 C.F.R. § 15.30; *see also* 29 U.S.C. § 794(a). The regulations implementing Section 504 prohibit entities receiving federal financial assistance from utilizing "criteria or methods of administration (i) that have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap, (ii) that have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the recipient's program or activity with respect to handicapped persons." 34 C.F.R. § 104.4(b)(4).

139.     The removal process, which includes adjudications of applications for relief from removal in immigration court, is a benefit administered by DHS and Plaintiffs are entitled to

participate in the removal process. The services, programs, and activities within the detention

center where DHS detains Petitioner receive substantial federal financial assistance.

140.     Petitioner's underlying medical conditions qualify as disabilities for purposes of

the Rehabilitation Act. 29 U.S.C. § 705(2)(B); 42 U.S.C. § 12102.

141.     By exposing him to a heightened risk of contracting COVID-19 and thereby

serious illness and/or death, Respondents are preventing Petitioner from participating in the

removal process and the services, programs, and activities within the detention center by reason

of his disability.

142.     By failing to take account of their special vulnerability to severe illness or death if

he were to contract COVID-19, Respondents are preventing Petitioner from participating in the

removal process and the services, programs, and activities within the detention centers by reason

of his disability.

143.     By failing to provide Petitioner adequate protection from COVID-19 through the

only effective means to reduce the risk of severe illness or death, Respondents have the purpose

or effect of defeating or substantially impairing the accomplishment of the objectives of removal

proceedings and the services, programs, and activities within the detention centers with respect

to Petitioner.

144.     The only available "reasonable accommodation" that would mitigate Petitioner's

disability is release from detention.  Respondents have failed to implement this reasonable

accommodation, which would not be unduly burdensome nor require a fundamental alteration in

the removal process or the services, programs, and activities of the detention center

145.     Respondents' ongoing detention of Petitioner constitutes discrimination because it

is either disparate treatment of, or at the very least has a disparate impact on, people with

qualifying disabilities who are at severe risk of serious illness or death if they were to contract COVID-19.

146.     For these reasons, Defendants' ongoing detention of Petitioner violates the Rehabilitation Act.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner Rodrigo Lizama Gutierrez respectfully requests that this Court:

1. Assume jurisdiction over this matter;

2. Issue a writ of habeas corpus and order Petitioner's immediate release or placement in community-based alternatives to detention such as conditional release, with appropriate precautionary public health measures, on the ground that his continued detention violates the Due Process Clause and/or the Rehabilitation Act;

3. In the alternative, issue injunctive relief ordering Respondents to immediately release Petitioner or place him in community-based alternatives to detention such as conditional release, with appropriate precautionary public health measures, on the ground that his continued detention violates the Due Process Clause and/or the Rehabilitation Act;

4. In the alternative, issue a writ of habeas corpus ordering Respondents to schedule an individualized hearing before an Immigration Judge with the burden of proof on the Government to establish whether Mr. Lizama Gutierrez presents a risk of flight or danger and ordering the Immigration Judge to consider alternatives to detention and take into account Mr. Lizama Gutierrez's ability to pay a bond within seven days;

   a. Order Mr. Lizama Gutierrez's immediate release if Respondents to not hold the aforementioned bond hearing within seven days;

5.  Declare that Respondents' prolonged detention of Mr. Lizama Gutierrez without a bond hearing violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution;

6.  Declare that the Board of Immigration Appeals' inaction violated the Administrative Procedures Act, 5 U.S.C. §§ 555(b) and 706;

7.  Grant a Writ of Mandamus ordering Respondent Board of Immigration Appeals to immediately review Mr. Lizama Gutierrez's Motion to Reconsider;

8.  Award Mr. Lizama Gutierrez all costs incurred in maintaining this action, including attorneys' fees under the Equal Access to Justice Act, 5 U.S.C. § 504, 28 U.S.C. § 2412; and on any other basis justified by law; and

9.  Grant any other and further relief this Court deems just and proper.

Dated: June 24, 2020

Respectfully submitted,

Adina Appelbaum, VSB No. 88974
**CAPITAL AREA IMMIGRANTS'
RIGHTS (CAIR) COALITION**
1612 K Street, N.W., Suite 204
Washington, D.C. 20006
Tel: (202) 899-1412
Fax: (202) 379-9052
adina@caircoalition.org

*Pro Bono Attorney for Petitioner Rodrigo
Lizama Gutierrez*