IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| RODRIGO LIZAMA GUTIERREZ and VICTOR QUINTANILLA GALLEGOS, <br><br> Petitioners-Plaintiffs, <br><br> v. <br><br> RUSSELL HOTT, et al., <br><br> Respondents-Defendants. | ) <br> ) <br> ) <br> ) <br> )   1:20-cv-712 (LMB/IDD) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION

Petitioners-plaintiffs Rodrigo Lizama Gutierrez ("Lizama Gutierrez") and Victor Quintanilla Gallegos ("Quintanilla Gallegos") (together, "petitioners") have filed a Corrected Petition for Writ of Habeas Corpus and Mandamus and Complaint for Injunctive and Declaratory Relief ("Petition") pursuant to 28 U.S.C. § 2241, in which they allege that their prolonged detention in the custody of United States Immigration and Customs Enforcement ("ICE") violates their right to due process under the Fifth Amendment to the United States Constitution. Respondents-defendants ICE; Russell Hott, in his official capacity as the Washington Field Office Director of ICE; Chad F. Wolf, in his official capacity as Acting Secretary of Homeland Security; and Matthew T. Albence, in his official capacity as Acting Director of ICE (collectively, "respondents") oppose the Petition.

The Petition originally included five other claims, two of which have been dismissed because the plaintiffs concede that they are moot, and three of which were severed and reassigned to the Honorable Liam O'Grady because they are related to a civil action pending before that judge. See Toure v. Hott, No. 1:20-cv-395. Although petitioners initially asked the Court to order that they be immediately released, the Court informed the parties during an on-

the-record teleconference held on July 14, 2020 that the sole issue that will be considered in this action is the following portion of Claim I: whether petitioners Lizama Gutierrez and Quintanilla Gallegos are entitled to an individualized bond hearing based on their prolonged detention.[1] For the following reasons, the Petition will be granted in part, and respondents will be ordered to provide petitioners with an individualized bond hearing.

I. BACKGROUND

a. Rodrigo Lizama Gutierrez

Petitioner Lizama Gutierrez is a native and citizen of El Salvador who fled his home country at the age of 15 to escape the MS-13 gang. [Dkt. No. 6] ¶ 26. He first entered the United States as an unaccompanied minor without inspection on or around August 21, 2014. Id. At some point after he entered the United States in 2014, Lizama Gutierrez was served with a Notice to Appear for Removal Proceedings ("NTA"). Id. ¶ 28. Although Lizama Gutierrez was detained for some period of time following the NTA, he was subsequently released on his own recognizance. [Dkt. No. 16] at 5.

Lizama Gutierrez has been convicted of several minor offenses since arriving in the United States. On September 17, 2017, he was found guilty of destruction of property in violation of Va. Code § 18.2-137 and sentenced to pay a $100 fine. Id. On April 4, 2018, he was

---

[1] The Petition also names Jeffrey Crawford as a respondent-defendant in his official capacity as Director of the ICA-Farmville Detention Center. Crawford has filed a response in which he states that he takes no position on Claim I and that he "understands that he is named as a respondent to claim[] I . . . in his official capacity solely because he is the immediate custodian of the detainees." [Dkt. No. 13] at 12 n.4. The Petition was also filed against William P. Barr, in his official capacity as Attorney General of the United States; James McHenry, in his official capacity as Director of the Executive Office for Immigration Review; David H. Wetmore, in his official capacity as Chairman of the Board of Immigration Appeals; and the Board of Immigration Appeals; however, those respondents-defendants are not named in Claim I, which is the only remaining count before this Court.

found guilty of possession of marijuana in violation of Va. Code § 18.2-250.1 and sentenced to pay a $100 fine. Id. The parties agree that Lizama Gutierrez was convicted of a third crime, but disagree as to the relevant crime: petitioner asserts that he was convicted of trespassing in violation of Va. Code § 13.1-33 on an unspecified date, for which he was sentenced to pay a $100 fine and serve six months' probation,[2] while respondents claim that he was convicted on May 8, 2018 of assault on a family member in violation of Va. Code § 18.2-57.2, for which he was granted deferred adjudication. [Dkt. No. 6] ¶ 33; [Dkt. No. 16] at 5. Petitioner was not sentenced to jail time for any of these offenses. [Dkt. No. 6] ¶ 33.[3]

On March 26, 2018, the Arlington Immigration Court granted Lizama Gutierrez's unopposed motion to terminate removal proceedings to enable him to apply for a Special Immigrant Juvenile Visa. Id. ¶ 30. On or around August 7, 2018, ICE took Lizama Gutierrez into custody and placed him in the Farmville Detention Center. Since then, removal proceedings have been reinstated against him. Id. ¶ 31.

At a hearing on January 17, 2019, an Immigration Judge concluded that Lizama Gutierrez was not competent to represent himself and ordered that he be represented by legal counsel during his removal proceedings. Id. ¶ 34. Through counsel, petitioner unsuccessfully applied for asylum, withholding of removal, and protection under the Convention Against Torture, and he has been ordered removed. Id. ¶ 35. Although Lizama Gutierrez claims to have timely appealed

---

[2] It appears that this citation to the Va. Code in petitioners' brief is a typo; there is no such section of the Va. Code.

[3] It appears that all of Lizama Gutierrez's offenses were misdemeanors. Although subsection (B)(ii) of Va. Code § 18.2-137 provides that damaging property which costs $1,000 or more is a Class 6 felony, subsection (B)(i) of that code section provides that damaging property worth less than $1,000 is a Class 1 misdemeanor. It appears likely that Lizama Gutierrez was convicted under section (B)(i), given that the property he destroyed was a door and he was only sentenced to pay a $100 fine.

3

that decision, the Board of Immigration Appeals ("BIA") dismissed the appeal as untimely, apparently based on a clerical error as to the date on which the appeal had been filed. Id. ¶ 36. Lizama Gutierrez filed a motion to reconsider on August 7, 2019, which the BIA granted almost 11 months later, after this lawsuit was initiated. Id.; [Dkt. No. 16] at 5. On August 26, 2019, the BIA granted Lizama Gutierrez a stay of removal. Id. Lizama Gutierrez has been detained under 8 U.S.C. § 1226(c) since August 7, 2018 without having had a bond hearing.

b. Victor Quintanilla Gallegos

Petitioner Quintanilla Gallegos is a native and citizen of Mexico. [Dkt. No. 6] ¶ 39. He entered the United States as a Lawful Permanent Resident in 1979, when he was a child. Id. On September 29, 2005, Quintanilla Gallegos was convicted of possession of a controlled substance in violation of Texas Health and Safety Code § 481.115(b) for which he was sentenced to time served and two years of probation. [Dkt. No. 16] at 6. On October 17, 2005, Quintanilla Gallegos was arrested by ICE after his release from custody for this offense, and ICE issued an NTA, charging Quintanilla Gallegos with being removable from the United States under 8 U.S.C. § 1227(a)(2)(B) and (a)(2)(A)(iii). [Dkt. No. 16-1] ¶ 24. On May 19, 2006, an immigration judge granted Quintanilla Gallegos's application for cancellation of removal for lawful permanent residents. Id. ¶ 27.

On February 22, 2011, Quintanilla Gallegos was convicted of misprision of felony in violation of 18 U.S.C. § 4 in the United States District Court for the Western District of Texas and sentenced to 21 months' incarceration. Id. ¶ 28. On October 6, 2011, Quintanilla Gallegos was arrested by ICE, and on October 14, 2011, ICE issued another NTA charging Quintanilla Gallegos with being removable under 8 U.S.C. § 1227(a)(2)(A)(ii). Id. ¶ 29. On November 16,

4

2011, the immigration judge terminated the proceedings without prejudice, finding that DHS had not proven the charge of removability in the NTA. Id. ¶ 30.

On March 30, 2017, Quintanilla Gallegos was convicted of aggravated battery with a deadly weapon after he pleaded no contest in New Mexico state court, which sentenced him to two years' supervised probation. Id. ¶ 31. Petitioner argues that his counsel rendered ineffective assistance in the New Mexico case and did not advise him of the immigration consequences of his plea in violation of Padilla v. Kentucky, 559 U.S. 356 (2010). [Dkt. No. 6] at 13. Petitioner is currently pursuing post-conviction relief under Padilla. Id. at 14. Petitioner's initial period of supervised probation was revoked in March 1, 2018 after he admitted violating his probation, after which he received a deferred sentence of three years' supervised probation.

On March 15, 2018, ICE arrested Quintanilla Gallegos. [Dkt. No. 16-1] ¶ 32. On April 25, 2018, ICE issued an NTA, charging Quintanilla Gallegos with being removable from the United States under 8 U.S.C. § 1227(a)(2)(A)(ii) in light of his prior convictions. Id. Respondents claim that a bond hearing was held on July 10, 2018, at which the immigration judge denied bond and found petitioner to be a danger to the community based on his criminal record. [Dkt. No. 16] at 5.[4] At a hearing on August 14, 2019, an immigration judge found Quintanilla Gallegos to be incompetent for purposes of representing himself in his immigration proceedings, and ordered that he be represented by counsel. [Dkt. No. 16-1] ¶ 45.[5] Quintanilla Gallegos has been detained since March 15, 2018 under 8 U.S.C. § 1226(c). Id.

---

[4] Petitioner does not concede that this hearing occurred.

[5] Respondents claim that Quintanilla Gallegos's attorney has requested multiple continuances of proceedings for attorney preparation time and to seek post-conviction relief in the New Mexico case. [Dkt. No. 16-1] ¶¶ 46-52.

5

II. DISCUSSION

"Under [28 U.S.C. § 2241], the writ of habeas corpus shall not extend to a prisoner unless he is in custody in violation of the Constitution or laws or treaties of the United States." Scott v. Vargo, 2014 WL 11514067, at *2 (E.D. Va. Sept 5, 2014). In determining whether prolonged detention without a bond hearing violates due process, "district courts in this district have applied a five-factor balancing test." Bah v. Barr, 409 F. Supp. 3d 464, 471 n.9 (E.D. Va. 2019) (collecting cases, including Portillo v. Hott, 322 F. Supp. 3d 698 (E.D. Va. 2018), Mauricio-Vasquez v. Crawford, No. 1:16-cv-1422, 2017 WL 1476349 (E.D. Va. Apr. 24, 2017), and Haughton v. Crawford, No. 1:16-cv-534, 2016 WL 5899285 (E.D. Va. Oct. 7, 2016)); see also Urbina v. Barr, No. 1:20-cv-325, 2020 WL 3002344 (E.D. Va. June 4, 2020). "The five factors are: (1) the duration of detention, including the anticipated time to completion of the aliens' removal proceedings; (2) whether the civil detention exceeds the criminal detention for the underlying offense; (3) dilatory tactics employed in bad faith by the parties or adjudicators; (4) procedural or substantive legal errors that significantly extend the duration of detention; and (5) the likelihood that the government will secure a final order of removal." Id. Although all five factors must be considered, on balance, the first factor is given "significant weight" due to the Supreme Court's well-documented "concerns about prolonged detention." Id. In this action, the five factors weigh strongly in favor of Gutierrez and in favor of Quintanilla Gallegos.[6]

---

[6] Respondents argue that the relevant inquiry for determining whether petitioners' due process rights have been violated is whether their continued detention carries out the purpose of § 1226(c) by ensuring attendance at removal proceedings. [Dkt. No. 16] at 12-13. In support of this argument, respondents cite the Supreme Court's decisions in Demore, 538 U.S. 510 and Zadvydas, 553 U.S. 678. As this Court held in Urbina, respondents' argument is unpersuasive. Neither Demore nor Zadvydas "fully answers the question of how to balance the interests at stake, leaving this Court to engage in its own balancing of the government's interest in detaining [petitioners] without a bond hearing to ensure [their] appearance at future proceedings and to protect the community[,] against [petitioners'] liberty interest in not being subject to extensive

6

a. Lizama Gutierrez

With respect to the first factor, Lizama Gutierrez has been detained by ICE for more than 23 months, since August 7, 2018.

> Although the duration inquiry does not admit of hard and fast parameters, courts seem to agree that the constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past the one-and-a-half-month average and five-month maximum thresholds cited by the Supreme Court in [Demore v. Kim, 538 U.S. 510 (2003)]. This approach also aligns with the concerns expressed in [Zadvydas v. Davis, 553 U.S. 678 (2001)] about detention in excess of six months. Moreover, at least one other court has contemplated the outer limit of reasonableness and determined that a criminal alien's detention without a bond hearing may often become unreasonable by the one-year mark, depending on the facts of the case.

Portillo, 322 F. Supp. 3d at 707. Accordingly, this factor "weighs heavily in [Lizama Gutierrez's] favor as a prolonged and substantial burden on his liberty interest." Id. at 708. Lizama Gutierrez's ongoing 23-month detention exceeds the 19-month detention at issue in Urbina, the 14-month detention at issue in Portillo, the 15-month detention at issue in Mauricio-Vazquez, and the 12-month detention at issue in Haughton, each of which the respective court found weighed strongly in favor of the detainee's right to be afforded a bond hearing. See id., Urbina, 2020 WL 3002344 at *6; Mauricio-Vasquez, 2017 WL 1476349, at *4; Haughton, 2016 WL 5899285, at *9.

As to the second factor, which weighs the length of the civil detention against the length of any criminal detention for the underlying offense, Lizama Gutierrez has been detained by ICE for more than 23 months, but he was not sentenced to jail time for any of his underlying criminal convictions. Respondents concede this fact. Moreover, as Lizama Gutierrez observes, even if he had been sentenced to jail time for his marijuana offense, the maximum jail time to which he

---

civil detention without having had an individualized bond review." Portillo, 322 F. Supp. 3d at 706–07.

7

could have been sentenced for that offense was 30 days, and Virginia has since enacted new legislation that completely removes the criminal penalty for simple possession of marijuana, replacing it with a $25 civil penalty. [Dkt. No. 6] at 34. Accordingly, this factor weighs heavily in Lizama Gutierrez's favor. See Portillo, 322 F. Supp. 3d at 708; cf. Haughton, 2016 WL 5899285, at *9 (explaining that the second factor weighed in favor of the government because the detainee's civil detention did not exceed his underlying criminal detention).

As to the third factor, Lizama Gutierrez makes no claim of bad-faith delay by the parties or the adjudicators. Although Lizama Gutierrez has filed an appeal with the BIA, this appears to have been filed in good faith, and "appeals and petitions for relief are to be expected as a natural part of the process and an alien cannot be detained indefinitely merely because he seeks to explore avenues of relief that the law makes available to him." Haughton, 2016 WL 5899285, at *9.[7] Accordingly, this factor "does not appear to favor either party." Portillo, 322 F. Supp. 3d at 708. As to the fourth factor, whether procedural or substantive legal errors have significantly extended the duration of detention, the proceedings have been delayed due to the BIA's apparent error in dismissing Lizama Gutierrez's appeal based on a miscalculation of the date the appeal was filed. Moreover, the BIA delayed ruling on Lizama Gutierrez's motion to reconsider for 11 months and did not act until Lizama Gutierrez filed this lawsuit alleging that the BIA's delay violated the Administrative Procedure Act. Therefore, this factor strongly weighs in favor of petitioner. As to the fifth factor, "[i]t is purely speculative to say" how the BIA will handle Lizama Gutierrez's appeal; "however, it does appear to the Court that [any] proceedings before

---

[7] Although respondents argue that Lizama Gutierrez could have filed a petition for review in the Fourth Circuit of the BIA's dismissal of his appeal, which might have allowed him to proceed more quickly, Lizama Gutierrez responds that he could not have directly filed such a petition in the Fourth Circuit because 8 U.S.C. § 1252(d)(1), which provides for judicial review of removal orders, requires exhaustion of administrative remedies.

8

the [immigration judge] and the BIA [may] take significantly longer to conclude." Mauricio-Vasquez, 2017 WL 1476349, at *5. Accordingly, this factor "does not provide guidance to the Court in this case." Id.[8]

As in Portillo, Mauricio-Vasquez, Haughton, and Urbina,[9] the five factors, on balance, strongly weigh in favor of Lizama Gutierrez, particularly given that "the government's interest in guarding against [petitioner's] flight can be substantially protected even if [petitioner] is given an individualized bond hearing" because "a critical factor that the [immigration judge] will be forced to consider is whether [petitioner] is a flight risk and whether there are conditions of release that could reasonably secure his future appearance." Portillo, 322 F. Supp. 3d at 709. For all these reasons, "due process demands that [Lizama Gutierrez] receive an individualized inquiry into whether his continued detention fulfills the purposes of [§ 1226(c)]." Id. "[A]t the bond hearing, the government must demonstrate that [Lizama Gutierrez] is either a flight risk or a danger to the community by clear and convincing evidence." Id.; see also Bah, 409 F. Supp. 3d at 472 (explaining that, "[a]s a practical matter, an alien who receives a bond hearing bears an initial burden of production to come forward with evidence that favors release" because he "is

---

[8] "An additional factor of legitimate concern is the threat that COVID-19 currently poses to incarcerated persons as well as the delay that the disease has injected into judicial and administrative proceedings." Urbina, 2020 WL 3002344, at *7 n. 9. This threat is not merely theoretical: there is currently a significant outbreak of COVID-19 at the Farmville Detention Center, where petitioners are housed in crowded dorms, making social distancing extremely difficult or impossible. Petitioners persuasively argue that these conditions mirror the jail-like conditions of a penal institution. See Haughton, 2016 WL 5899285, at *8 n.3 (observing that whether a detention facility is substantially similar to a penal institution "may be probative of [the] reasonableness" of a petitioner's continued detention).

[9] Notably, the petitioner in Urbina had a much more serious criminal history than Lizama Gutierrez: he had been convicted of five counts of statutory burglary for which he was sentenced to 10 years' imprisonment, nine of which were suspended. Despite this history, the Court ordered that Urbina be granted a bond hearing and the government has informed the Court that this hearing resulted in Urbina being released on bond.

9

best situated to produce evidence on issues such as his ties to the United States, family connections, and employment history," but "[a]s a matter of Due Process, the government bears the ultimate burden of persuasion").[10]

b. Quintanilla Gallegos

Although the five factors are not as strong for Quintanilla Gallegos, they nonetheless weigh in his favor as well. As to the first factor, the length of detention, Quintanilla Gallegos has been detained for more than 28 months, longer than Lizama Gutierrez and the petitioners in Urbina, Portillo, Mauricio-Vasquez, and Haughton. "[T]his Court and other courts have described the first factor . . . as the most important." Portillo, 322 F. Supp. at 708. As to the second factor, Quintanilla Gallegos's civil detention has exceeded the 21 months to which he was sentenced for misprision of felony, which was the longest period of detention for any of his criminal offenses. Indeed, for his most recent conviction, on which his current civil detention is based, he was not sentenced to any jail time. As with Lizama Gutierrez, the third factor is of limited relevance because neither Quintanilla Gallegos nor respondents appear to have been operating in bad faith. Although respondents point out that Quintanilla Gallegos has sought certain continuances to allow him to pursue relief and to allow his attorney time to prepare his case, courts may not "penalize[] an alien's exercise of his legal rights" and a decision "to explore

---

[10] Respondents argue that "[t]he [o]nly [r]elief the Court [s]hould [c]onsider [i]s a [b]ond [h]earing in [w]hich [p]etitioners [b]ear the [b]urden of [p]roof." [Dkt. No. 16] at 19. In support of this argument, respondents cite the Supreme Court's decision in Jennings v. Rodriguez, 138 S. Ct. 830 (2018) and the Fourth Circuit's decision in Guzman Chavez v. Hott, 940 F.3d 867 (4th Cir. 2019). As this Court held in Urbina, respondents' argument is unpersuasive. The decisions in Bah and Portillo on this issue "remain[] good authority" because both Jennings and Guzman Chavez "focused on the protections required by [§ 1226(c)] and did not reach the constitutional question." Portillo, 322 F. Supp. 3d at 709 n.9. In this action, the Court "must determine what protections are demanded by the Constitution, not what protections are authorized by the statute." Id.

avenues of relief that the law makes available to him does not mitigate the Due Process concerns created by his lengthy detention." Bah, 409 F. Supp. 3d at 471-472.

With respect to the fourth factor, whether legal errors have significantly extended the duration of detention, Quintanilla Gallegos argues that he would not be detained but for the Padilla error in his New Mexico state court proceedings. Respondents contend that the proceedings have been delayed in part because petitioner sought the wrong form of relief from removal; however, petitioner appears to have done so before counsel was appointed for him. Because any delays in these proceedings have stemmed from multiple sources, this factor does not weigh heavily in favor of either party. Finally, as to the fifth factor, the likelihood that the government will secure a final order of removal "is purely speculative" at this point. Mauricio-Vasquez, 2017 WL 1476349, at *5. Quintanilla Gallegos argues that he has a viable path to relief, particularly given that he is a Lawful Permanent Resident who has lived in the United States for over 40 years. Compare Portillo, 322 F. Supp. 3d at 708 (granting relief even when "the current prospects for [petitioner] to succeed on his application for withholding of removal do not appear especially strong.").

Respondents argue that Quintanilla Gallegos already had a bond hearing in July 2018, and therefore is not entitled to another one. Quintanilla Gallegos does not concede that this hearing occurred, but argues that even if it had occurred, "his liberty interest now, after two additional years of detention, clearly outweighs the government's interest in detaining him." [Dkt. No. 20] at 4 n.1. The Court agrees that Quintanilla Gallegos is entitled to another bond hearing, particularly given that he was not represented by counsel at the time his first bond hearing allegedly occurred, and the significant Padilla issue had not been identified at that time. Moreover, although respondents argue that ordering a second bond hearing would impermissibly

11

"set aside" the decision the immigration judge already made to deny Quintanilla Gallegos bond, this is incorrect. The Court is not reviewing or setting aside the immigration judge's alleged findings at the July 2018 hearing. Instead the Court is simply ordering that another bond hearing be held, at which the immigration judge may draw his or her own conclusions as to whether bond is appropriate under the very different circumstances identified in this Memorandum Opinion.

On balance, the factors weigh in favor of ordering that Quintanilla Gallegos receive an individualized bond hearing addressing whether his continued detention fulfills the purposes of § 1226(c). As with Lizama Gutierrez, at the bond hearing "the government must demonstrate that [Quintanilla Gallegos] is either a flight risk or a danger to the community by clear and convincing evidence."

### III. CONCLUSION

For the reasons stated above, the Petition will be granted in part by an Order to be issued with this Memorandum Opinion.

Entered this 27th day of July, 2020.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge